Appeal No. 2014-1390

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

**SOUTHCO, INC.,**

*Plaintiff-Appellant,*

**v.**

**FIVETECH TECHNOLOGY INC.,**
**AKA Wu Xiang Technology Company, Ltd., AKA 5tech,**

*Defendant-Appellee.*

## APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA IN
## CASE NO. 10-cv-01060-MAM, JUDGE MARY A. MCLAUGHLIN.

## BRIEF FOR DEFENDANT-APPELLEE

RHODES ATTORNEYS AT
LAW P.C.
Glenn W. Rhodes
Heather H. Fan
One Market Street
Spear Tower, Suite 3600
San Francisco, CA  94105
Telephone:  (415) 293-8185
Facsimile:  (415) 477-4003

CHAMBERLAIN, HRDLICKA,
WHITE, WILLIAMS & &
MARTIN, P.C.
Elizabeth S. Fenton
300 Conshohocken State Road
Suite 570
West Conshohocken, PA  19428
Telephone:  (610) 772-2340
Facsimile:  (610) 772-2305

*Attorneys for Defendant-Appellee*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for the Defendant-Appellee certifies the following:

1.  The full name of every party or amicus represented by me is:

    Fivetech Technology Inc.

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    None.

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    None.

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

    RHODES ATTORNEYS AT LAW P.C. by Glenn W. Rhodes and Heather H. Fan.

    CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY by Elizabeth S. Fenton.

    KILPATRICK TOWNSEND & STOCKTON LLP by Glenn W. Rhodes, Cindy Hsinhsian Chou, and G. Ross Allen.

    REED SMITH LLP by Elizabeth S. Fenton, Maryellen Feehery Hank, Mathew P. Frederick, and Michael C. Falk.

    HOWREY LLP by Glenn W. Rhodes, Stephanie M. Byerly, and Jesse D. Mulholland.

Dated:  July 17, 2014

By:  /s/ Glenn W. Rhodes
Glenn W. Rhodes

RHODES ATTORNEYS AT LAW P.C.
Glenn W. Rhodes
  Glenn@Rhodes-PC.com
Heather H. Fan
  Heather@Rhodes-PC.com
One Market Street
Spear Tower, Suite 3600
San Francisco, CA  94105
Telephone:  (415) 293-8185
Facsimile:   (415) 477-4003

CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY
Elizabeth S. Fenton
  bfenton@chamberlainlaw.com
300 Conshohocken State Road
Suite 570
West Conshohocken, PA  19428
Telephone:  (610) 772-2340
Facsimile:  (610) 772-2305

Attorneys for Defendant-Appellee
Fivetech Technology Inc.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ......................................................................... ix

STATEMENT OF RELATED CASES .......................................................... 1

STATEMENT OF THE ISSUES ................................................................... 1

COUNTER STATEMENT OF THE CASE .................................................. 3

   I.     THE PARTIES ............................................................................... 3

   II.    CAPTIVE FASTENER TECHNOLOGY ................................. 3

   III.   THE ASSERTED SOUTHCO PATENTS ................................. 4

         A.    The Three Asserted Patents Share a Common
               Specification ................................................................... 4

         B.    The Patents Describe a Specific Way of Press-
               Fitting a Screw Into a Knob from the Underside of
               the Knob ......................................................................... 4

                 1.    The Specification Describes a Captivation
                        Means that Directly Attaches the Knob and
                        Ferrule to Retain the Screw in the Ferrule ............ 5

                 2.    The Specification Does Not Define "Rigidly
                        Secure" ................................................................... 6

                 3.    The Specification Describes an "Annular
                        Chamfer" On the Lower Edge of the Screw
                        Head Wherein Displaced Knob Material
                        During the Press-Fit "Fills the Chamfer" .............. 6

                 4.    Characterizations of the Invention in the
                        Specification & During Reexamination Are
                      Limiting ................................................................. 8

   IV.   FIVETECH'S CAPTIVE FASTENERS ................................. 10

iii

A. A Washer Retains the Screw in Fivetech's Captive Fasteners; The Knob Plays No Part in Retaining the Screw ..................................................................... 10

B. Standard Screws are Used in Fivetech's Fasteners; The Knob is Injection Molded Onto the Screw Head and No Chamfer is Needed or Used ..................... 11

V. THE CLAIMS OF THE '095 AND '131 PATENTS ............. 12

A. The Asserted Claims Recite a "Captivation Means" for Retaining the Screw in the Ferrule that Requires a Knob Attached to the Ferrule ...................... 12

B. The District Court Correctly Rejected a Claim Construction that Would Make the Recited Knob Superfluous ................................................... 13

VI. THE ASSERTED CLAIMS OF THE '012 PATENT ............. 13

A. The "Rigidly Secure" Claims ........................................ 13

1. Claims 1, 6, 8 and 14 Require Protrusions on the Screw Head to "Rigidly Secure" the Screw Head to the Inner Surface of the Knob ................................................................ 13

2. The District Court Correctly Held No Infringement of the "Rigidly Secure" Claims ..... 14

B. The "Chamfer" and "Fills said Chamfer" Claims ......... 15

1. Claims 2-5 and 7-14 Require an Annular Chamfer Peripheral to the Bottom Surface of the Screw Head ................................................... 15

2. The District Court Correctly Held No Infringement of the "Chamfer" and "Fills said Chamfer" Claims .......................................... 16

VII. THE ASSERTED TRADEMARKS ....................................... 17

A. Southco's Trademark Registrations................................ 17

B. Fivetech's Five Pentagon Mark ..................................... 17

C. District Court Correctly Held No Trademark Infringement, Finding No Basis for Extraterritorial Application of the Lanham Act ..................................... 18

ARGUMENT SUMMARY ........................................................... 18

ARGUMENT ........................................................................... 25

I. STANDARD OF REVIEW ..................................................... 25

A. Appellate Review of Claim Construction and Summary Judgment is Conducted *De Novo* .................. 25

B. A Decision to Admit or Exclude Evidence is Reviewed Under the Law of the Regional Circuit ........ 26

II. THERE IS NO INFRINGEMENT OF THE '095 AND '131 PATENTS, EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS................................. 26

A. "Attached" Requires a Direct Attachment Between the Knob and Ferrule to Avoid Reading Knob Out of the Claim.................................................................. 26

1. The "Captivation Means" Limitation Recites Both a Knob and a Ferrule for Performing the "Captivation Means" Function ...................... 26

2. Southco Ignores the "Captivation Means" Limitation and Focuses on "Attached" in Isolation .............................................................. 28

3. The District Court Properly Construed the Captivation Means Limitation of the Claims as Requiring a Knob *Directly* Attached to the Ferrule.......................................................... 29

v

4.      The District Court Correctly Held that there is No Literal Infringement of the Asserted Claims ................................................................. 30

B.      No Infringement Under the Doctrine of Equivalents ...................................................................... 30

1.      The "All Elements Rule" Requires that a Claim Limitation Have a Corresponding Equivalent Element in the Accused Product ....... 30

2.      The Fivetech Product Lacks a Corresponding Element to the "Captivation Means" ................................................................. 31

3.      The Court Correctly Held No Infringement Under the Doctrine of Equivalents ...................... 33

III.      THE DISTRICT COURT PROPERLY FOUND NO INFRINGEMENT OF THE '012 PATENT ............................ 35

A.      Fivetech's Products Fail to Meet the "Rigidly Secure" Limitation .......................................................... 35

1.      Southco's Initial Expert Report Made No Attempt to Define "Rigidly Secure" or Explain How Fivetech's Products Met the Limitation .......................................................... 35

2.      Facing Summary Judgment, Southco Created an After-the-Fact Definition of "Rigidly Secure" Based on an Unsupported "Industry-Standard" Torque Analysis ................. 36

3.      The District Court Correctly Rejected Southco's After-the-Fact Construction and Infringement "Proof" ........................................... 39

4.      The Intrinsic Evidence Does Not Support an Expansive Reading of "Rigidly Secure" ............. 40

5.  On Appeal, Southco Still Urges its "Ordinary Meaning" Based on the Unsupported Torque Test ..................................... 41

B.  The District Court Properly Found that Fivetech's Accused Products Fail to Meet the Chamfer Limitation ...................................................................... 45

1.  Southco's Expert's Initial Expert Report, as With the Analysis of "Rigidly Secure," is Completely Conclusory on the Issue of "Annular Chamfer" ............................................ 45

2.  Southco's Claimed Prejudice in Not Getting Discovery of Dr. Dornfeld's Expert Analysis of No Chamfer Is False—Southco Simply Didn't Ask .......................................................... 46

3.  Assuming the Absence of Dr. Dornfeld's Declaration Underscores that Southco Lacked Evidence to Establish the "Chamfer" Limitation in the Fivetech Products ................... 48

4.  The District Court Correctly Concluded that Southco Failed to Raise a Fact Issue on the "Chamfer" Limitation ......................................... 50

C.  The District Court Correctly Found that Fivetech's Products Fail to Meet the "Fills the Chamfer" Limitation ...................................................................... 50

1.  The "Fills the Chamfer" Limitation Requires the Displacement of Knob Material ................... 50

D.  Southco Raises No Genuine Issue of Material Fact on the Asserted Doctrine of Equivalents Issue ............. 51

IV.  THE DISTRICT COURT PROPERLY FOUND NO TRADEMARK INFRINGEMENT ......................................... 53

A.    Southco's Claim Does Not Support Extraterritorial
      Application of the Lanham Act ...................................... 53

B.    Southco Fails to Address the Evidence Under the
      "Substantial Effects" Test for the Extraterritorial
      Application of the Lanham Act Against a Foreign
      Defendant ...................................................................... 53

C.    No Support Exists for the Extraterritorial
      Application of the Lanham Act ...................................... 55

      1.    Existence of a Website Alone Does Not
            Support Extraterritorial Application Act ............. 56

      2.    No Support is Provided that an "Offer"
            Meets the "Substantial Effects" Test,
            Particularly Where the Only Evidence of
            Any Offer Was Induced by Southco Itself .......... 57

      3.    Southco Cites No Authority that a
            Trademark Application Alone Supports an
            Infringement Claim or Implicates the
            "Substantial Effects" Test ................................... 59

      4.    An Application's Declaration Absent
            Evidence of Actual Use in Commerce, is
            Insufficient to Raise a Fact Issue ........................ 60

      5.    There is No Genuine Issue of Material Fact
            As to Any Issue and the District Court's
            Order of No Infringement Warrants Full
            Affirmance ........................................................... 60

CONCLUSION ............................................................................. 61

CERTIFICATE OF FILING AND SERVICE ............................. 62

CERTIFICATE OF COMPLIANCE ............................................ 63

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

*Afros S.P.A. v. Krauss-Maffei Corp.*,
 671 F. Supp. 1402 (D. Del. 1987) ...................................................... 50

*Andersen Corp. v. Fiber Composites, LLC*,
 474 F.3d 1361 (Fed. Cir. 2007) .......................................................... 42

*Augme Techs., Inc. v. Yahoo! Inc.*,
 No 2013-1121, 1195, 2014 U.S. App. LEXIS 11606
 (Fed. Cir. Jun. 19, 2014) ...................................................................... 35

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
 616 F.3d 1249 (Fed. Cir. 2010) .......................................................... 28

*Buti v. Impressa Perosa, S.R.I.*,
 139 F.3d 98 (2d Cir. 1998) .................................................................. 54

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,
 145 F.3d 1303 (Fed. Cir. 1998) ..................................................... 31, 32

*Edwards Lifesciences LLC v. Cook Inc.*,
 582 F.3d 1322 (Fed. Cir. 2009) .......................................................... 42

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*,
 697 F.3d 1342 (Fed. Cir. 2012) .......................................................... 26

*Fivetech Tech., Inc. v. Southco, Inc.*,
 Appeal No. 2013-010265, 2014 Pat. App. LEXIS 166
 (PTAB Jan. 14, 2014) .................................................................... 13, 40

*Freeman v. Gerber Products Co.*,
 388 F. Supp. 2d 1238 (D. Kan. 2005) ................................................ 50

*Fujitsu Ltd. v. Netgear, Inc.*,
 620 F.3d 1321 (Fed. Cir. 2010) ..................................................... 27, 28

*Gallup, Inc. v. Bus. Research Bureau (PVT.) Ltd.*,
    688 F. Supp. 2d 915 (N.D. Cal. 2010) .................................................. 57

*Gemalto S.A. v. HTC Corp.*,
    No. 2013-1397, 2014 U.S. App. LEXIS 11520
    (Fed. Cir. Jun. 19, 2014) ................................................................ 52, 53

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
    No. 2013-1450, 2014 U.S. App. LEXIS 12105
    (Fed. Cir. Jun. 27, 2014) ................................................................ 41, 42

*Kemco Sales, Inc. v. Control Papers Co., Inc.*,
    208 F.3d 1352 (Fed. Cir. 2000) ..................................................... 26, 27

*Keurig, Inc. v. Sturm Foods, Inc.*,
    732 F.3d 1370 (Fed. Cir. 2013) ........................................................... 25

*Kossler v. Crisanti*,
    564 F.3d 181 (3d Cir. 2009) ............................................................... 58

*Lighting Ballast Control LLC v. Philips Elecs. N.A.*,
    744 F.3d 1272 (Fed. Cir. 2014) ......................................................... 25

*Lockheed Martin Corp. v. Space Systems/Loral, Inc.*,
    324 F.3d 1308 (Fed. Cir. 2003) ......................................................... 30

*McBee v. Delica Co., Ltd.*,
    417 F.3d 107 (1st Cir. 2005) ...................................................... *passim*

*Mirror Worlds, LLC v. Apple Inc.*,
    692 F.3d 1351 (Fed. Cir. 2012) ......................................................... 31

*Nicini v. Morra*,
    212 F.3d 798 (3d Cir. 2000) ......................................................... 25, 26

*Omega S.A. v. Omega Eng'g, Inc.*,
    396 F. Supp. 2d 166 (D. Conn. 2005) ................................................ 59

*Orthovita, Inc. v. Erbe*,
    No. 07-2395, 2008 WL 423446 (E.D. Pa. Feb. 14, 2008) ................. 58

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ..................................................... 28, 44

*Pineda v. Ford Motor Co.*,
    520 F.3d 237 (3d Cir. 2008) .............................................................. 26

*PSN Illinois, LLC v. Ivoclar Vivadent, Inc.*,
    525 F.3d 1159 (Fed. Cir. 2008) ........................................................ 30

*Rescuecom Corp. v. Google Inc.*,
    562 F.3d 123 (2d Cir. 2009) .............................................................. 54

*SafeTCare Mfg., Inc. v. Tele-Made, Inc.*,
    497 F.3d 1262 (Fed. Cir. 2007) ........................................................ 42

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
    242 F.3d 1337 (Fed. Cir. 2001) ........................................................ 42

*Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*,
    988 F.2d 1165 (Fed. Cir. 1993) ........................................................ 52

*Tommy Bahama Grp., Inc. v. Sexton*,
    No. 07-06360 EDL, 2009 WL 4673863
    (N.D. Cal. Dec. 3, 2009), *aff'd*,
    476 F. App'x 122 (9th Cir. 2012) ..................................................... 58

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997) ............................................................................ 31

## <u>STATUTE</u>

35 U.S.C. §112 ........................................................... 26, 27, 31, 32

## <u>RULE</u>

Fed. R. Civ. P. 56(d) ......................................................... 2, 47, 48

## STATEMENT OF RELATED CASES

No other appeal in or from this action has previously been before this or any other appellate court. Fivetech is aware of no cases pending before this Court that will directly affect or be directly affected by the Court's decision in this appeal.

## STATEMENT OF THE ISSUES

1.      With respect to the claims at issue in the '095 and '131 patents, was the district court correct in holding no infringement either literally or under the doctrine of equivalents where it rejected an interpretation of "captivation means" that would render the "knob" limitation superfluous?

2.      With respect to claims 1, 6, 8 and 14 of the '012 patent that require a knob that is "rigidly secure" to the screw head, was the district court correct in construing the limitation in the context of the patent and reexamination file history, where the intrinsic record failed to define "rigidly secure," and no other ordinary meaning was discernable?

3.      With respect to claims 2-5 and 7-14 of the '012 patent that requires an "annular chamfer" on the lower surface of a screw head, was the district court correct in finding no infringement, either literally or under the doctrine of equivalents, where the evidence proffered by the patentee was conclusory and failed to raise a genuine issue of material fact?

4.     Where an expert declaration is submitted in support of a summary judgment motion on an issue where the summary judgment movant does not bear the burden of proof, did the district court correctly deny a motion to strike the declaration where Southco made no independent tests and took no depositions during the entirety of the litigation and made no attempt to obtain discovery under Rule 56(d) as it was permitted to do?

5.     With respect to claims 2-5 and 8-14 of the '012 patent that requires knob material "fill the chamfer," was the district court correct in construing the "fills the chamfer" limitation in the context of the patent specification and arguments presented during reexamination limiting the claims to a press-fit wherein displaced knob material is flowed into the chamfer, and where Southco otherwise failed to raise a genuine issue of material fact?

6.     Where the extraterritorial application of the Lanham Act involving a non-U.S. citizen requires consideration of the substantial effect of the foreign conduct on United States commerce, was the district court correct in finding no trademark infringement where Southco failed to show that the foreign conduct had a substantial effect on U.S. commerce and otherwise failed to raise a genuine issue of material fact?

## <u>COUNTER STATEMENT OF THE CASE</u>

### I.    THE PARTIES

Southco manufactures "captive screws."  (A6.)  Fivetech also manufactures captive screws.  (A934, ¶7.)  Southco is a Delaware corporation headquartered in Pennsylvania.  (A933, ¶1.)  Fivetech is a Taiwan corporation located in Sindian City, Taiwan.  (A933, ¶2.)

### II.    CAPTIVE FASTENER TECHNOLOGY

Captive screws (also called captive fasteners) are not new.  For example, U.S. Patent 3,465,803, entitled Captive Screw Device and Method for Securing Together the Parts Thereof" issued on September 9, 1969 to Ernest et al.  (A1122.)



Captive fasteners are generally used to attach one panel to another.  A metal sleeve (ferrule) is attached to the first panel and the screw is passed through the ferrule and into the second panel as illustrated below:

3



What makes it a "captive fastener" is that the screw is retained in the ferrule so that it does not fall out before the screw is inserted into the second panel. This is important, for example, in the electronics industry where installers do not want screws falling into electronic equipment during the installation process.  A knob can be included on the screw head.  (A7, Lines 7-10; A1063-65.)

## III.    THE ASSERTED SOUTHCO PATENTS

### A.    The Three Asserted Patents Share a Common Specification.

Southco's U.S. Patent 5,851,095, entitled "Captive Screw" issued on December 22, 1998 (A4541.)  The other two asserted patents, 6,280,131 (A4555) and 6,468,012 (A4567) are continuations based on the '095 patent.[1]

### B.    The Patents Describe a Specific Way of Press-Fitting a Screw Into a Knob from the Underside of the Knob.

Southco's patents describe a captive screw where the screw head is press-fitted into a knob from the underside of the knob.  The abstract aptly summarizes the key features of the patents, as follows, in relevant part:

---

[1] Since the specifications of all three patents are identical, references to the specification will be to the '095 patent unless otherwise indicated.

4

A captive screw … the captive screw having a screw, a ferrule that attaches to the upper panel, a thin-walled, cylindrical hollow knob and protrusions integral to the outer perimeter of the head portion of the screw to <u>rigidly secure</u> the perimeter of the head of the screw to the inner surface of the knob, the <u>protrusions providing a press-fit of the screw to the inner surface of the knob</u> where the screw is <u>pressed into the knob from the underside of the knob</u>. (A4541, Abstract.) (Emphasis added.)

Three aspects of the patents are at issue on appeal: (1) the "captivation means" used for retaining the screw in the ferrule that employs directly attaching the knob to the ferrule, (2) "rigidly securing" the head of the screw to the inner surface of the knob, and (3) using a "chamfered" edge on the lower periphery of the screw head to facilitate a bottom-up press-fit of the screw into the knob by filling in the chamfer with material displaced from the inner surface of the knob.

      1.    <u>The Specification Describes a Captivation Means that Directly Attaches the Knob and Ferrule to Retain the Screw in the Ferrule.</u>



Fig. 2

The specification refers to a "screw captivation means **54**." (A4549, 3:8-9.) In the described embodiment (as shown in Fig. 2), a pair of annular flanges **35** (on the knob) and **56** (on the ferrule) "allow the knob **30** and the ferrule **55** to be a single, non-detachable

5

assembly, while allowing for radial and axial movement of the knob **30** with respect to the ferrule **50**." (A4550, 5:13-17.) As illustrated, the cooperating flanges between the knob and the ferrule retain the screw in the ferrule.

2.    The Specification Does Not Define "Rigidly Secure."



*Fig. 4*

In describing the bottom up press-fit, the specification (referencing Figure 4) describes protrusions (26) that provide a press-fit to the inner surface of a knob (30) whereby material in the knob**,** preferably of a soft material (e.g., aluminum), is displaced by the protrusions, made from a relatively hard material (e.g., stainless steel). "The screw **20** is thereby <u>rigidly secured</u> to the knob **30**." (A4549, 3:20-27.) (Emphasis added.)

3.    The Specification Describes an "Annular Chamfer" On the Lower Edge of the Screw Head Wherein Displaced Knob Material During the Press-Fit "Fills the Chamfer."

The press-fit of the screw into the knob fills the chamfer on the screw's lower edge material from the knob's inner surface. (A4548, 1:54-57.)



The specification illustrates the press-fit in Figures 10 and 11. The chamfer (29) is shown in Fig. 10 "during the pressing-in of the screw prior to the point where the screw has been fully pressed-in to the knob **30**." (A4549, 3:38-41; 44-46.) The screw head is pressed upwards into the inner surface of the knob (30) in the direction of arrow A, and material from the knob (33) is pressed such that the knob material flows into the chamfer (29). (A4549, 3:49-54.)

4.    <u>Characterizations of the Invention in the Specification &
During Reexamination Are Limiting.</u>

The specification characterizes the invention as a unique bottom-up

press-fit that is distinguished from the prior art bottom-down press-fits, as

illustrated by the following excerpts from the specification:

> The captive screw of the present invention has a <u>unique
> configuration</u> in <u>the means by which</u> the screw portion of the
> captive screw is mounted to the knob of the captive screw.
> (A4548, 1:33-36.) (Emphasis added.)

> The flange with the protrusions or the screw head with the
> protrusions <u>rigidly secures</u> the screw head to the inner surface
> of the knob and <u>provides a press-fit of the screw to the inner
> surface of the knob</u>.  (A4548, 1:44-48.) (Emphasis added.)

> Further, the screw head is installed into the knob from the
> <u>bottom side of the knob rather than the top side of the knob as
> in similar prior art screws</u> providing further advantages as
> described below." (A4548, 1:50-53.) (Emphasis added.)

> A second means for attachment of the screw to the knob allows
> for a press fit of the screw into the knob <u>by filling in a chamfer
> on the periphery of the screw with material from the inner
> surface of the knob</u>.  (A4548, 1:54-57.) (Emphasis added.)

> The construction of the knob/screw interface <u>allows for
> insertion of the screw into the bottom of the knob, rather than
> the top of the knob</u>.  (A4548, 1:61-63.) (Emphasis added.)

> An alternate embodiment 10 of the captive screw of the present
> invention is depicted in FIGS. 12 and 13…. <u>This embodiment
> does retain the advantages of the structure by virtue of the fact
> that the screw installs through the bottom of the knob, rather
> than the top, as in prior art screws</u>.  (A4550, 5:47-59.)
> (Emphasis added.)

During reexamination of the '095 patent, Southco distinguished the

prior art based on the chamfer and the flow of material. (A2349.)

Specifically, Southco argued as follows:

> The Huck drawing also fails to disclose the chamfer on the underside of the screw head or the flow of material from the inner surface of the knob into the area provided by the chamfer. <u>The chamfer at the top surface of the Huck screw does not function to permit insertion of the screw from the bottom of the knob</u>. If it is assumed that the top portion of the knob in Huck is bent over the chamfer, <u>that is not comparable in any respect to the flow of material from the inner surface of the knob called for by the claims</u>. There is <u>nothing to suggest that Huck's knob could be inverted to provide insertion from the bottom and it could not be accomplished, in any event, without completely redesigning it</u>." (A2349.) (Emphasis added.)

The reexamination file history shows that Southco understood that the

chamfer was to facilitate a bottom-up press-fit of a screw into a knob.



During the reexamination, Southco

also highlighted the meaning of "rigidly

secured." Referring again to Huck,

Southco argued that "Huck does not

Huck (A2366)    show a rigid connection between the

knob and the head of the screw." (A2347.) Specifically, Southco argued

that Huck failed to show the "protrusions claimed in the patent," asserting

that the claimed protrusions "are a significant limitation." (A2347-48.)

Southco noted that the patent itself contrasted "the claimed protrusions from

9

a mere knurl." (A2348.)  Southco contrasted the knurl shown on the outer surface of the knob in Fig. 1 of the '095 patent with the protrusions shown in Fig. 5, concluding that it "makes clear that a knurled surface without more does not provide the protrusions called for by the patent." (A2348-49.)

## IV.  FIVETECH'S CAPTIVE FASTENERS

### A.    A Washer Retains the Screw in Fivetech's Captive Fasteners; The Knob Plays No Part in Retaining the Screw.

The Fivetech fasteners at issue are Fivetech's 46 Series panel fasteners.  (A75, ¶8.)



As shown at left, the 46 Series fasteners have a screw, ferrule, spring, washer, and a plastic knob.  (A1071; A2370, ¶3.)  The washer retains the screw in the ferrule.  (A1071.)

This is illustrated below where the captive fastener on the left is shown in an extended position, and in a retracted position on the right. (A1072-73.)

10



As illustrated, the washer cooperates with the flange on the ferrule to hold the screw in the ferrule.[2]  (*Id.*)  Fivetech's use of a washer to capture the screw in the ferrule is undisputed.  (*See, e.g.*, A9.)

### B. Standard Screws are Used in Fivetech's Fasteners; The Knob is Injection Molded Onto the Screw Head and No Chamfer is Needed or Used.



Fivetech's Captive Fasteners use standard screws (as shown at the left (A2368)) that have knurls or score lines on the screw head.  (A2371, ¶4.) A thermoplastic injection molding process molds the knob onto the screw.  (A2371, ¶¶5-6.)

---

[2] As a further illustration of using a washer to retain the screw, see Ernest at al., U.S. Patent 3,465,803 showing a washer retaining a screw in a ferrule. The screw in Ernest has no knob.  (A1065-66.)

The Fivetech 46 Series fasteners use standard steel screws produced in the general cold forming process.  (A3179, ¶4.)  They have a natural round angle on the edge, rather than a right angle.  (*Id.*)  The round edges are formed naturally in the cold forming process, and do not provide any function.  (A3179, ¶6.)

## V.    THE CLAIMS OF THE '095 AND '131 PATENTS

### A.    The Asserted Claims Recite a "Captivation Means" for Retaining the Screw in the Ferrule that Requires a Knob Attached to the Ferrule.

Affirmance of the district court's holding on the "captivation means" limitation resolves the issues regarding the '095 and '131 patents.[3]

Claim 1 of the '095 patent is representative of the "captivation means" limitation at issue, which states:

> A captive screw … and a <u>threaded shaft captivation means</u>, said threaded shaft captivation means adjacent the second end [of the ferrule], wherein the <u>second end of the ferrule is slidably and rotatably attached to the knob</u> such that when the threaded shaft is in a retracted position <u>the threaded shaft captivation means prevents the ferrule and the knob from separating</u> …."
> (A4550, 6:2 and 6:23-29.) (Emphasis added.)

As recited, both the knob and the ferrule are required structures of the "captivation means" limitation.

---

[3] The district court held no infringement of method claims 16 and 17 of the '095 patent.  (A2596.76, ¶2).  Southco does not challenge that holding.

**B.    The District Court Correctly Rejected a Claim Construction that Would Make the Recited Knob Superfluous.**

The district court granted Fivetech's summary judgment motion of no infringement of claims 1-15 of the '095 patent and claims 1-15 of the '131 patent.  (A5.)

The district court rejected Southco's proposed interpretation that "attached" included <u>indirect</u> attachment.  The court found the proposed interpretation would read out the way that the "Southco claimed invention actually captures the screw." (*See*, A15.)  Consequently, the court found no literal infringement (A16-17), and no infringement under the doctrine of equivalents (A19), finding that Southco's interpretation required reading limitations out of the claims.  (A20.)

## VI.    THE ASSERTED CLAIMS OF THE '012 PATENT

### A.    The "Rigidly Secure" Claims.

1.    <u>Claims 1, 6, 8 and 14 Require Protrusions on the Screw Head to "Rigidly Secure" the Screw Head to the Inner Surface of the Knob.</u>[4]

Affirmance of the district court's holding of no infringement based on the "rigidly secure" limitation resolves the asserted claims 1, 6, 8 and 14 of

---

[4] The Patent Trial & Appeal Board (PTAB) found claims 1 and 6 of the '012 patent invalid as anticipated by the prior art.  *Fivetech Tech., Inc. v. Southco, Inc.*, Appeal No. 2013-010265, 2014 Pat. App. LEXIS 166, at *9-10 (PTAB January 14, 2014).  Southco withdrew its appeal (Appeal No. 2014-1413) of the PTAB's decision to this Court.

13

the '012 patent.[5]  Claim 1 is representative of the "rigidly secure" limitation,

which states:

> A captive screw … b) a knob having an inner surface, wherein
> said protrusions rigidly secure said head portion to said inner
> surface of said knob ….

> The specification does not define "rigidly secure."  It is only

illustrated by one specific disclosure that describes the claimed protrusions

that displace knob material.[6]  (*See*, A3172.)

### 2.    The District Court Correctly Held No Infringement of the "Rigidly Secure" Claims.

Absent a definition in the intrinsic record, the court construed "rigidly

secure" in accordance with the only illustration that gave any meaning to

"rigidly secure," i.e., displacing knob material to "rigidly secure the screw to

the knob."  (A42; A4549, 3:20-27.)

The court rejected Southco's "ordinary meaning" construction and

proof of infringement theory, a theory based on Southco declarations.  The

declarations asserted that "rigidly secure" has an ordinary meaning and

could be ascertained by a "torque test."  The district court held that the

---

[5] To eliminate possible confusion, Appellants brief erroneously associates "rigidly secure" to the asserted claims of the '095 and '131 patents.  (Br: 30, Heading B.)  The "rigidly secure" limitation applies to the '012 patent.
[6] Fivetech also asserted that the "rigidly secure" claims are invalid as insolubly indefinite.  (A3017-19; 3172, n.2.)  The court denied Fivetech's motion without prejudice.  (A68.)

declarations were unsubstantiated and failed to raise a genuine issue of

material fact.  (A43-44.)

**B.      The "Chamfer" and "Fills said Chamfer" Claims.**

1.      <u>Claims 2-5 and 7-14 Require an Annular Chamfer
Peripheral to the Bottom Surface of the Screw Head.</u>

Affirmance of the district's court holding of no infringement as to the

chamfer limitation resolves all issues with respect to the remaining claims 2-

5 and 8-14 of the '012 patent that contain the "fills said chamfer" limitation.[7]

The relevant portion of claim 7 states as follows:

A captive screw … a) a screw having a head portion and a shaft
having at last a threaded portion, said head portion having a top
surface and a bottom surface, said head portion further having
an <u>annular chamfer</u> <u>peripheral to said bottom surface of said
head portion.</u>  (A4577, 7:3-10.) (Emphasis added.)

Claim 2 is representative of a claim containing the "fills said chamfer"

limitation, which states as follows:

The captive screw according to claim 1, wherein said head
portion has a top surface and a flat, annular bottom surface, said
head portion further has an <u>annular chamfer peripheral to said
annular bottom surface of said head portion, and material from
said knob fills said chamfer.</u>  (A4576, 6:29-33.) (Emphasis
added.)

---

[7] Claim 7 does not have the "fills the chamfer" limitation.

2. <u>The District Court Correctly Held No Infringement of the "Chamfer" and "Fills said Chamfer" Claims.</u>

The district correctly found that no reasonable jury could conclude that Fivetech's Series 46 screws have an annular chamfer under either a literal infringement or a doctrine of equivalents theory. (A39.) The district court held that the Fivetech fasteners had radii on the edges of the screw portions, and not the claimed chamfered edges and therefore there is no literal infringement. (A37.) The district court also concluded that the evidence showed that the radii were not equivalents in form, function, or fabrication and therefore were not infringed under the doctrine of equivalents. (*Id.*) The district court rejected Southco's evidence as unsupported. (A37-39.)

On the "fills the chamfer" limitation, the district court rejected Southco's evidence because it did not involve any comparison of the accused product to the claims of the patent. (A39.) The district court concluded that since Fivetech's screws were injection molded, no knob material was displaced, and there was no infringement as a matter of law. (A40-41.)

## VII.  THE ASSERTED TRADEMARKS

### A.    Southco's Trademark Registrations

Southco asserts infringement of U.S. Trademark Registration Nos.

2,478,685 and 3,678,153.  (Br. 7.)

### B.    Fivetech's Five Pentagon Mark

Fivetech made only one sale of the accused fasteners into the U.S.,

and those screws lacked Fivetech's mark.  (A51-52.)  That sale was

engineered by Southco through a third-party company, Specialty Resources,

Inc. ("SRI").  (A740.)  SRI attempted to buy additional fasteners.  Fivetech

gave a price quote, but never sold additional products to SRI.  (A51.)

Fivetech does not conduct regular business in the United States and

maintains no offices, employees, or agents in the United States.  (A905.)

The majority of Fivetech's customers are in Taiwan and China.  (A906.)

Fivetech maintains a website along with an online catalogue.  (A53.)[8]

Fivetech sells fasteners to its customers in Asia.  Some are incorporated into

servers sold worldwide.  (A53-54.)  An attorney, Mr. Steven Rabin, acted on

behalf of Fivetech in filing a trademark application for the Fivetech mark in

the U.S. Patent & Trademark Office.  (A52.)  In that filing, in response to a

---

[8] The court noted that the online catalogue document was an exhibit attached
to Southco's Complaint, but included no affidavit to explain what is was or
where it came from.  (A53.)

prompt, the attorney attested to a use in commerce.  (*Id.*)  However,

Fivetech's president did not know that the application was filed, and

submitted a declaration attesting that Fivetech does not use the mark in

commerce and does not market or sell products in the U.S.  (*Id.*)  Fivetech's

application was withdrawn and abandoned three months after it was filed.

(*Id.*)

The alleged "offer for sale" is based on an unsupported allegation in

the summary judgment briefing below that Fivetech "offered to sell" two

captive fasteners with the Fivetech mark to SRI.  (A2889.)  Rather, Southco

had SRI make an order for Fivetech products with its mark, an order that

Fivetech <u>rejected</u>.  (*See*, A630 n.6; A3352 n.4; A169-170, ¶¶13-17.)

### C.    District Court Correctly Held No Trademark Infringement, Finding No Basis for Extraterritorial Application of the Lanham Act.

The district court concluded that "Southco presents no evidence of

activity by Fivetech in the United States involving [Fivetech's] Five

Pentagon mark, even when considering Southco's supplemental evidence."

(A62-63.)


### ARGUMENT SUMMARY

Affirmance of the district court's holding of no infringement of the

"captivation means" limitation in the '095 and '131 patents resolves all

issues with respect to those patents.  At issue in the '012 patent are three limitations:  (1) the "rigidly secure" limitation, (2) the "chamfer" limitation, and (3) the "fills the chamfer" limitation.  The remaining substantive issue is the district court's holding of no infringement based on the lack of evidence to support the extraterritorial application of the Lanham Act.  The final issue is procedural, and relates to the court's refusal to strike Fivetech's expert's declaration submitted in support of Fivetech's summary judgment of no infringement of the '012 patent.  The district court's orders are all fully supported by the record and each order should be affirmed.

The claims at issue in the '095 and '131 patents recite a "captivation means" to capture a screw in a ferrule.  The "captivation means" limitation recites the structure, a knob attached to a ferrule, that performs the "captivation means" function.  Southco focuses on the ordinary meaning of "attached," and argues that "attached" includes "indirectly attached."  Fivetech argues, as the district court held, that Southco's construction fails to focus on the "captivation means" limitation that requires that the knob and ferrule perform the "captivation means" function, and a construction that makes the knob limitation optional makes that limitation superfluous.  In the accused Fivetech products, the knob plays no part in the "captivation means."  Southco ignores the clear wording of the "captivation means"

limitation and focuses on the "attached" limitation in isolation in order to stretch the claims to cover Fivetech's device. However, that construction reads the knob limitation out of the claims in violation of basic claim construction principles. For similar reasons, Southco's arguments fail under the doctrine of equivalents because an equivalents finding would also eviscerate the knob limitation from the "captivation means" recited in the claims.

Claims 1, 6, 8 and 14 of the '012 patent recite a knob having an inner surface, wherein a plurality of protrusions "rigidly secure" the head of a screw to the inner surface of a knob. The patent does not define "rigidly secure," and the term is illustrated by one example in the specification. Southco's initial expert report merely stated that in Fivetech's products the screw head was rigidly secured to the knob, and lacked any explanation of what rigidly secured meant, nor any explanation of how Fivetech's products met the limitation. Facing Fivetech's summary judgment motion, Southco proffered two affidavits, one by its disclosed expert, Dr. Pratt, and one by Southco's employee, Mr. Frattarola. The two declarations purport that "rigidly secure" has an ordinary meaning that can be tested with reference to an industry standard torque test. The declarations are conclusory and unsupported, and the district court found that they failed to raise a fact issue.

20

The district court construed "rigidly secure" in accordance with the specification and the file history that illustrated "rigidly secure" was limited to a press-fit wherein a screw head is pressed into a knob, displacing knob material. The characterizations in the specification extensively support this limitation. Southco described the bottom-up press-fit as a unique configuration in the way by which the screw portion of the captive screw is mounted to the knob, and made arguments distinguishing the prior art in the reexamination of the initial '095 patent, where Southco argued that its press fit established a "rigid" attachment as opposed to the prior art. Since in Fivetech's products the knob on the screw head is injection molded, there is no press-fit that involves pressing the screw head into a knob and displacing knob material, as the district court found. In short, injection molding a plastic knob onto a screw head is not a press-fit that displaces knob material in the context of the '095 patent.

Regarding the "chamfer" limitation, Southco's expert's initial report provided no definition of chamfer and performed no tests or measurements, and gave no explanation of how Fivetech's products met the chamfer limitation. Given the lack of evidence, Fivetech moved for summary judgment. Fivetech engaged its expert, Dr. Dornfeld, to conduct a test to confirm that Fivetech's screws lacked the required chamfer to support its

motion.  Faced with Fivetech's summary judgment motion, Southco attempted to create a fact issue by both criticizing <u>and</u> relying on Dr. Dornfeld's tests.  Southco did not perform its own tests, but relied on representations in demonstrative engineering drawings that are not pertinent to the chamfer issue.  As to the only actual test on a Fivetech product, performed by Dr. Dornfeld, Southco's expert's analysis is best summed up as "it looks like a chamfer to me."  Based on Southco's lack of evidence, the district court held that Southco failed to raise a fact issue on the "chamfer" limitation.

In relation to the expert declaration of Dr. David Dornfeld that established that the accused Fivetech products lacked the required chamfer, Southco moved to strike Dr. Dornfeld's declaration, arguing prejudice because it was unable to conduct discovery to rebut Fivetech's motion for summary judgment.  However, Southco's initial expert report contained no tests or analyses or explanation of the construction of "chamfer" or how Fivetech's screws met the chamfer limitation.  Southco deposed no one during the litigation and did not attempt to obtain discovery under Rule 56(d).  All Dr. Dornfeld did was conduct tests, tests that Southco should have done itself, to demonstrate that the screws lacked the required chamfer.

Under these circumstances, the court properly exercised its discretion in denying Southco's motion to strike.

Regarding the "fills said chamfer" limitation, the specification shows that the function of the annular chamfer is to accommodate a bottom-up press-fit of a screw head into a knob, wherein displaced knob material in the press-fit "fills the chamfer." Southco highlighted its clear understanding of the chamfer's function in arguing a bottom up press-fit during reexamination to distinguish the prior art. Southco specifically distinguished the prior art "chamfer" as on the wrong edge of the prior art screw, that would not correctly perform the bottom-up press-fit of the invention where material from the knob flows into the chamfer during the press fit. In the context of the patent specification and arguments presented during reexamination to distinguish the prior art, the district court correctly held that a knob that is injection-molded onto a screw head fails to meet the "fills said chamfer" limitation.

On the remaining issue, the district court correctly found no evidence to support Southco's claim. Extraterritorial application of the Lanham Act, where the defendant is a non-U.S. citizen, focuses primarily on whether the defendant's conduct has a "substantial effect" on U.S. commerce. Southco argues that the extraterritorial application of the Act is warranted based on Fivetech's website, Fivetech's abandoned trademark application, and an

23

alleged "offer to sell."  However, the cases make clear that the mere fact of a

foreign website does not demonstrate a "substantial effect" on U.S.

commerce.  Second, Southco cites no authority that supports that a

trademark application alone implicates a claim under the Act.

Regarding the "offer to sell," Southco had a third-party (SRI) order

the product.  At most, Fivetech provided a quote, and thereafter rejected

SRI's order.  No evidence supports this as an "offer to sell" or that it

warrants the extraterritorial application of the Act.  In addition, in similar

cases, where the sale was the only sale at issue and the sale was engineered

by the plaintiff, the issue was disposed of on summary judgment.  Those

courts reasoned that in the context of an induced sale, it is clear that there is

no confusion by the purchasing party, and therefore no implication of the

Act.  Similarly, since Southco itself induced the alleged offer, there is no

actual confusion and the Act is not implicated.

On the final issue, Southco claims that the declaration submitted by

Fivetech in connection with its now abandoned trademark application raises

a genuine issue of material fact.  Southco contends there is a credibility

question between the attorney that filed the application on behalf of Fivetech

and the declaration of Fivetech's president that he was not aware of the "use

in commerce" requirement and Fivetech did not market or sell products to

the United States.  This does not create a genuine issue of material fact.  The

mere filing of a trademark application does not raise an issue of

infringement under the Lanham Act.  There must still be evidence of a "use

in commerce."  Where there is no evidence of a "use in commerce," a

declaration that confirms that there is no use in commerce does not create an

issue of fact.

In view of the above, the judgments of the district court are fully

supported by the record and the district court correctly granted summary

judgment on all the issues and properly exercised discretion is denying the

motion to strike.

## ARGUMENT

### I.    STANDARD OF REVIEW

#### A.    Appellate Review of Claim Construction and Summary Judgment is Conducted *De Novo.*

Claim construction is a question of law that is reviewed *de novo.*

*Lighting Ballast Control LLC v. Philips Elecs. N.A.*, 744 F.3d 1272, 1276-77

(Fed. Cir. 2014) (en banc).  A district court's grant of summary judgment is

reviewed under the law of the regional circuit where the district court sits, in

this case the Third Circuit.  *Keurig, Inc. v. Sturm Foods, Inc*., 732 F.3d 1370,

1372 (Fed. Cir. 2013).  The Third Circuit reviews the grant of summary

judgment *de novo*.  *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (en

banc).  Under Third Circuit law, the district court's grant of summary

judgment may be affirmed on any grounds supported by the record.  *Id.*

### B. A Decision to Admit or Exclude Evidence is Reviewed Under the Law of the Regional Circuit.

A district court's order admitting or excluding evidence is reviewed

under the law of the regional circuit.  *Energy Transp. Grp., Inc. v. William*

*Demant Holding A/S*, 697 F.3d 1342, 1355 (Fed. Cir. 2012).  The Third

Circuit reviews evidentiary rulings under an abuse of discretion standard.

*Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).  Under Third

Circuit law, the district court's evidentiary ruling should not be disturbed

absent a firm and definite conviction that the district court made a clear error

of judgment in making its decision after weighing the relevant factors.  *Id.*

### II. THERE IS NO INFRINGEMENT OF THE '095 AND '131 PATENTS, EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS.

### A. "Attached" Requires a Direct Attachment Between the Knob and Ferrule to Avoid Reading Knob Out of the Claim.

1. The "Captivation Means" Limitation Recites Both a Knob and a Ferrule for Performing the "Captivation Means" Function.

Claim limitations employing the word "means" raise a rebuttable

presumption that 35 U.S.C. §112, ¶6 governs the claim limitation.  *See, e.g.,*

*Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1361 (Fed.

Cir. 2000). The presumption is rebutted if the claim limitation itself recites the structure for performing the function. *Id.*

The claims at issue recite a "captivation means," and, except for claim 12 of the '131 patent, the structure for performing the captivation means is recited in the claim, which requires a knob attached to a ferrule.[9] (*See, e.g.*, A1069 n.7.) Claim 1 of the '095 patent is representative, which states:

> A captive screw … and a <u>threaded shaft captivation means</u>, said threaded shaft captivation means adjacent the second end [of the ferrule], wherein the <u>second end of the ferrule is slidably and rotatably attached to the knob</u> such that when the threaded shaft is in a retracted position <u>the threaded shaft captivation means prevents the ferrule and the knob from separating</u> …."
> (A4550, 6:2 and 6:23-29.)

Since the "captivation means" recites the knob and ferrule structures for performing the function, the claims are not analyzed as "means-plus-function" claims.

Claim terms are "generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Fujitsu Ltd. v.*

---

[9] In this appeal, Southco is not challenging the no literal infringement finding as to claim 12, written in §112, ¶6 means-plus-function language. (Br. 24.) Although in its Statement of the Issues, Southco indicates that it is challenging the doctrine of equivalents holding of claims 1-15 of the '095 patent and claims 1-15 of the '131 patent, which would include claim 12 of the '131 patent (Br. 3, ¶3), it does not address the doctrine of equivalents in the context of a means-plus-function claim. (*See* Br. 36-40.)

*Netgear, Inc.*, 620 F.3d 1321, 1325-26 (Fed. Cir. 2010) (*citing Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)).  However, a construction that requires reading a limitation out of a claim is improper. *See, e.g.*, *Fujitsu*, 620 F.3d at 1337. (Patentee's "argument on appeal would have us read the … limitation entirely out of the claims.")

> 2.    <u>Southco Ignores the "Captivation Means" Limitation and Focuses on "Attached" in Isolation.</u>

Southco's argument excludes mentioning the "captivation means" limitation that identifies the structure (knob and ferrule) that performs the recited "captivation means" function.  (*See* Br. 24-30.)  By ignoring the "captivation means" limitation and the required knob and ferrule structures recited to perform the function, Southco stretches the claims to cover Fivetech's products.  In Fivetech's products the knob plays no part in capturing the screw.  It wouldn't matter if Fivetech's screw had a knob or not, the washer would still retain the screw in the ferrule.

Southco's construction makes the recited knob limitation <u>optional</u>.  As pointed out in *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1257 (Fed. Cir. 2010), patentees cannot argue that physical structures and characteristics that are specifically described in a claim are superfluous.  Otherwise, it would render the scope of the patent ambiguous. *Id.*

3.    The District Court Properly Construed the Captivation Means Limitation of the Claims as Requiring a Knob *Directly* Attached to the Ferrule.

Southco argues an improper importation of a preferred embodiment into the claims.  (Br. 27.)  That is incorrect; the "captivation means" limitation itself requires both a knob and ferrule to perform "captivation means" function.  Otherwise the knob limitation is superfluous.

The district court reached the correct construction, noting that the "language of the Southco patent claims, that 'the ferrule is slidably and rotatably attached to the knob,' describes a captivation mechanism in which a screw is held in place by the connection between the knob and ferrule." (A14.)  The court declined to construe the claims against their clear language.  (A15.)  The words of the claims require the direct attachment of the knob and ferrule.  The district court properly rejected the construction that made the required limitation superfluous.[10]

_____

[10] Southco complains that no separate analysis was provided of claim 1 of the '131 patent that substitutes "engaged" for "attached."  (Br. 28-29.) Southco's brief below expressed its disagreement with Fivetech's assertion that "engaged" was the same as "attached."  (A1185 n.4.)  However, Southco proposed no different construction.  (A2296 n.3.)  Southco still provides no different interpretation and no separate analysis is needed.  Even separately analyzed, the captivation means still requires both a knob and a ferrule to avoid rendering the limitation superfluous.

4.    <u>The District Court Correctly Held that there is No Literal Infringement of the Asserted Claims.</u>

Southco cites only the court's claim construction as the basis of the court's order of no infringement. (Br. 29.) If the proper construction of "captivation means" requires both the recited "knob" and "ferrule" there is no literal infringement as a matter of law. In Fivetech's 46 Series fasteners the knob plays no part in the screw captivation means and the court correctly concluded no literal infringement. (A16-17.)

**B.    No Infringement Under the Doctrine of Equivalents.**

1.    <u>The "All Elements Rule" Requires that a Claim Limitation Have a Corresponding Equivalent Element in the Accused Product.</u>

There is no doctrine of equivalents infringement under the "all elements rule" "if even one limitation of a claim or its equivalent is not present in the accused device." *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003). Accordingly, if a doctrine of equivalents analysis eliminates a claim limitation, "then the court should rule that there is no infringement under the doctrine of equivalents." *Id.*; *see also*, *PSN Illinois, LLC v. Ivoclar Vivadent, Inc.*, 525 F.3d 1159, 1167-68 (Fed. Cir. 2008)(finding no infringement under the doctrine of equivalents where infringement finding would render the claim limitation meaningless under the "all elements rule.")

With respect to an equivalence analysis under 35 U.S.C. §112, ¶6, the

analyses overlap, but are not coextensive.[11] *Chiuminatta Concrete*

*Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1310 (Fed. Cir.

1998). However, where there is no equivalence to a claim element under

§112, ¶6, a contrary finding under the doctrine of equivalence should be

precluded. *Id.* at 1311.

> 2.    The Fivetech Product Lacks a Corresponding Element to
> the "Captivation Means."

The "captivation means" limitation requires a knob directly attached

to the ferrule to perform the captivation means function. Fivetech's products

lack a corresponding knob attached to the ferrule to perform the captivation

means function. Southco's equivalence theory "vitiate[s] claim language by

allowing the exact opposite of what is required." *Mirror Worlds, LLC v.*

*Apple Inc*., 692 F.3d 1351, 1358 (Fed. Cir. 2012). Where an equivalence

theory "would entirely vitiate a particular claim element, partial or complete

judgment should be rendered by the court." *Warner-Jenkinson Co. v. Hilton*

*Davis Chem. Co*., 520 U.S. 17, 39 n.8 (1997).

---

[11] Southco's brief on the doctrine of equivalents issue does not address an equivalents analysis of a §112, ¶6 means-plus-function claim. (*See*, Br. 36-40.) Given that Southco fails to address this issue, any challenge to the court's finding of no infringement of claim 12 of the '131 patent under the doctrine of equivalents should be deemed waived. Nevertheless, Fivetech addresses it here briefly.

Claim 12 of the '131 patent, written in Section 112, ¶6 format, recites a "screw captivation means adjacent said second end of said ferrule." (A1080; A4564, 6:30-32.)  Only one structure is disclosed in the '131 patent for performing the "captivation means" function.  It describes, referring to Figures 2 and 3, the structure for performing the "captivation means" as a knob and ferrule having annular flanges that "allow the knob 30 and ferrule 55 to be a single, non-detachable assembly…."  (A1081; A4564, 5:3-25.)

As described, the structure performing the "captivation means" requires a direct attachment between the knob and the ferrule.  Southco agrees that there is no literal infringement of claim 12.  There is also no infringement of claim 12 under the doctrine of equivalents.

A theory of a doctrine of equivalents as to a means-plus-function claim cannot eliminate the required structure.  "[E]quivalence under the doctrine of equivalents requires that each claim limitation be met by an equivalent element in the accused device." *Chiuminatta*, 145 F.3d at 1311. If equivalence is not met under §112, ¶6 with respect to a limitation, it cannot be met under the doctrine of equivalents. *Id.* "An element of a device cannot be 'not equivalent' and equivalent to the same structure." *Id.*

### 3.    The Court Correctly Held No Infringement Under the Doctrine of Equivalents.

The court correctly concluded no infringement under the doctrine of equivalents, finding that Southco's interpretation would write the knob out of the claims.  (A20.)  On similar reasoning, the district court held that claim 12 of the '131 patent was not infringed under the doctrine of equivalents, noting that the recited function of claim 12 "keeps the screw captured in a different way than in the series 46 screws."  (A20-21.)

On appeal, Southco argues that the district court misapplied the "all elements rule" (Br. 36), and failed to consider the Southco evidence that it claimed raised a fact issue.  (Br. 38.)

Regarding the misapplication of the "all elements rule," Southco's arguments mischaracterize the court's analysis.  Southco cites the court's illustration of the differences between the "captivation means" limitation of Southco's claims and the use of the washer to retain the screw in the ferrule as in Fivetech's products.  (A19-20.)  The court's comparison merely shows the different structures between the claims and the Fivetech products.  In the claimed device, the screw would no longer be captured without the knob, and in the Fivetech product, the knob does not function to retain the screw in the ferrule.  As a result, the only conclusion to draw, as the district court did, is that under the "all elements rule" Fivetech's product would not infringe

33

because Southco's theory would require the court to write the knob

limitation "out of the claim entirely."  (A20.)

Southco argues that it presented evidence of equivalence.  (Br. 38.)

But all Southco does is repeat its same tired theory that, in Fivetech's

product, the washer retains the screw in the ferrule, the screw has a knob,

and therefore the knob is prevented from separating from the ferrule.  (*See*

Br. 38-39.)  Southco mischaracterizes the function of the "captivation

means."  The function of the captivation means is not to "capture the knob."

The function is to "capture the screw."  Second, the claim limitations

themselves require a knob and ferrule directly attached to retain the screw.

Southco also cites expert testimony about the known

"interchangeability" of the washer/flange structure of Fivetech's product and

as used in the prior art, concluding that the differences are "insubstantial."

(Br. 39.)  However, as the district court noted, "known interchangeability…

is not dispositive of equivalence."  (A19.)  And Southco's expert's testimony

is irrelevant.  Southco's construction eliminates the necessity of the recited

knob as part of the "captivation means."  No reasonable jury could find

equivalence here because doing so would require a determination that the

absence of the knob forming part of the captivation means in Fivetech's

product is the same as the presence of a knob as required by the asserted

34

claims.  *See Augme Techs., Inc. v. Yahoo! Inc.*, No 2013-1121, 1195, 2014 U.S. App. LEXIS 11606 at *19 (Fed. Cir. Jun. 19, 2014)("No reasonable jury could find equivalence here because doing so would require a determination that embedded code is substantially the same as linked code – the very thing that the construction of 'embedded' excludes.")  "The concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims."  *Id.*

Southco's evidence is conclusory.  It fails to raise a fact issue and the district court correctly found no infringement of the '095 patent and '131 patent.  The court's judgment of no infringement should be affirmed.

## III.    THE DISTRICT COURT PROPERLY FOUND NO INFRINGEMENT OF THE '012 PATENT.

### A.    Fivetech's Products Fail to Meet the "Rigidly Secure" Limitation.

#### 1.    Southco's Initial Expert Report Made No Attempt to Define "Rigidly Secure" or Explain How Fivetech's Products Met the Limitation.

The claims require that the knob and screw head are "rigidly secure." Southco's initial expert report of Dr. John Pratt purports to give a detailed claim-by-claim analysis of infringement.  (A4097.)  Dr. Pratt sets out his "analysis" in the table contained in Exhibit 4 to his report.  (*See*, A4115-4153.)  The first column contains the claim language, and the second column

is labeled "Infringement Evidence." (*Id.*)  The table also refers to a series of photos of an alleged 46 Series captive fastener.  (*See*, A4154-4161.)

With respect to the "rigidly secure" limitation, Dr. Pratt states in his report that "[t]he series 46 fasteners comprise a knob (8) having an inner surface (13) that is rigidly secured to the head portion (2) with the protrusions (6)." (*See, e.g.*, A4148, Row 5.)  Dr. Pratt made no attempt to define "rigidly secure" or explain how Fivetech's 46 Series fasteners met the "rigidly secure" limitation.  Based on the report's insufficient and conclusory analysis, Fivetech moved for summary judgment.  (*See*, A3172-3173.)

> 2.    Facing Summary Judgment, Southco Created an After-the-Fact Definition of "Rigidly Secure" Based on an Unsupported "Industry-Standard" Torque Analysis.

Southco's brief opposing Fivetech's summary judgment states that "[a]s the Pratt and Frattarola declarations confirm, protrusions on the outer perimeter of the head of the Fivetech screw rigidly secure the head portion of the screw to the inner surface of the knob." (A3498.)

Dr. Pratt's declaration states the "ordinary meaning" as follows:

> "Rigidly secure" as it is ordinarily understood by those of ordinary skill in the captive screw art means that the two parts in question, in this case the screw head and the knob, are attached to one another such that the assembly of the two parts behaves as a single rigid body, in other words such that there is no relative movement between the two parts, under the

36

conditions of use that the captive screw is expected to withstand in <u>accordance with industry standards</u>.

(A3554-3554, ¶9.) (Emphasis added.)

Paragraph 9 of Dr. Pratt's declaration further states that those "industry standards are well known to those of ordinary skill in the art, and those of ordinary skill in the art can readily determine if a given captive screw meets those industry standards and thus falls within the scope of the claims 1-3, 6, 8 and 14 of the '012 patent." Dr. Pratt concludes his "proof" of infringement with reference to a separate declaration stating that "[h]ow one may determine if a given captive screw has a knob that is rigidly secured to the screw head is demonstrated in the Frattarola declaration, paragraphs 5, 7, and 9, Exhibits A and B." (A3555, ¶9.)

Mr. Frattarola is a Southco employee. (A3791, ¶1.) Mr. Frattarola states in his declaration that "rigidly secure" means a "maximum recommended tightening torque (RTT) for <u>machine screws</u> in accordance with screw thread size and material for the screw" based on "tables from the Assembly Engineering Master Catalog…." (A3792-3793, ¶5.) (Emphasis added.) Mr. Frattarola further states that the "data in these tables have become the de facto industry standard for quality Machine screws," concluding that "[t]herefore, it is expected that the captive screws of the type involved in this litigation will be tightened to the RTT values shown in

37

Exhibit A."  (A3793, ¶5.)  Paragraph 7 of Mr. Frattarola's declaration then

makes the leap that the RTT values are applicable to the connection between

the head of the screw and the inner surface of the knob of a captive

fastener."  (A3795, ¶7.)  Next, Mr. Frattarola conducted tests where he

allegedly "tested Southco captive screw made in accordance with the '012

patent to determine the torques that would destroy the connection between

the screw head and the inner surface of the knob without relative movement

between them."  (A3796, ¶9.)  He then allegedly tested Fivetech 46 Series

"to determine the torque that would destroy the connection between the

screw head and the inner surface of the knob."  *Id.*  Not surprisingly, Mr.

Frattarola concludes that the results of the Fivetech fastener tests "placed

them well above the curve in Exhibit B."  (A3797, ¶9.)

 If Southco was relying on this construction of "rigidly secure," then it

was obligated to include the construction and proof in Dr. Pratt's initial

expert report.  That Southco created the construction out of whole cloth for

purposes of defending against Fivetech's summary judgment motion is clear.

 The declarations are conclusory.  Mr. Frattarola's does not identify

any definition of "rigidly secure" in the documents relied on.  Second, Mr.

Frattarola fails to show that the RTT values apply to any more than just

screws.  There is no evidence that the RTT values apply to the attachment of

38

a knob of a captive screw to a screw head.  The only evidence is Mr.

Frattarola's unsupported assertion.  Finally, the "test" based on the asserted

torque values is meaningless and fails to support infringement or raise a fact

issue.[12]

### 3. The District Court Correctly Rejected Southco's After-the-Fact Construction and Infringement "Proof."

Southco's proposed "ordinary meaning" is without support, and the

asserted tests are insufficient to raise a fact issue.  Affirmance of the district

court's holding of no infringement is warranted.  The district court rejected

Southco's "ordinary meaning" construction and proof of infringement theory

that was based on the declarations of Dr. Pratt, and Southco's employee, Mr.

Frattarola.  The district court held that the declarations failed to raise a

genuine issue of material fact.  (A43.)  The court found that Mr. Frattarola's

torque experiment on Fivetech products that purportedly showed that the

knobs of the products were rigidly secure failed to inform the court's

"interpretation of the claims having the 'rigidly secured' limitation."  The

district court noted that "[n]owhere in the patent, or in the intrinsic evidence

related to the patent, is the term 'rigidly secured' defined in terms of torque."

(*Id.*)  As the court correctly concluded, "no reasonable jury could find that

---

[12] Mr. Frattarola's was never disclosed as an expert witness and never
provided an expert report.

the Series 46 screws contain a plurality of protrusions to rigidly secure the screw to the inner surface of the knob."[13]  (A43-44.)

 4. The Intrinsic Evidence Does Not Support an Expansive Reading of "Rigidly Secure."

Southco asserts that "[t]he ordinary meaning of the phrase "rigidly secure," as understood by one of ordinary skill in the art, is 'that the two parts in question, in this case the screw head and the knob, are attached to one another such that the assembly of the two parts behaves as a single rigid body'." (Br. 30, citing Pratt's Declaration (A3554, ¶9).)  Southco concludes that "[t]he phrase 'rigidly secure' requires no construction beyond its ordinary and customary meaning to one of ordinary skill in the art."  (Br. 32.)  In its brief, Southco fails to mention the unsupported torque test of Mr. Frattarola, yet Paragraph 9 of Dr. Pratt's declaration referred to by Southco still refers to Mr. Frattarola's unsupported torque test.  (A3554-55, ¶9.)

---

[13] During the reexamination of the '012 patent by the PTAB, Southco attempted the same argument that "rigidly secure" has an ordinary meaning to one of ordinary skill in the art based on a certain minimum torque.  The PTAB also rejected Southco's claimed definition of "rigidly secure" as completely unsupported.  *Fivetech Technology, Inc. v. Southco, Inc.*, Appeal No. 2013-010265, 2014 Pat. App. LEXIS 166, at *11-12 (PTAB Jan. 14, 2014) ("The [declarations of Pratt and Frattarola] are not substantiated by persuasive objective evidence in support thereof and the declarations fail to establish a specialized meaning of the limitation "rigidly secure" within the art, or that it invokes any industry standard, much less the torque values that are specifically set forth in the Master Catalog.").

Accordingly, Southco is still urging a construction on appeal which lacks support in the record.

> 5.    On Appeal, Southco Still Urges its "Ordinary Meaning" Based on the Unsupported Torque Test.

The record does not support adopting Southco's proposed "ordinary meaning" construction and rejecting the district court's interpretation that, given the phrase's lack of any meaningful definition, is consistent with the intrinsic evidence.  Although claims are to be given their plain and ordinary meaning, the prerequisite is that a "plain and ordinary meaning" can be ascertained.  That is not the case here.

"Rigidly Secure" cannot be given an ordinary meaning based on an unsubstantiated torque "analysis" and given the lack of support from the intrinsic record.  Although disavowal is generally pertinent in the context where an ordinary meaning exists, the cases where disavowal has been found to limit claims are instructive.  These cases support the district court's construction that "rigidly secure" requires displacement of knob material in the context of the '012 patent.

In *Hill-Rom Servs., Inc. v. Stryker Corp.*, No. 2013-1450, 2014 U.S. App. LEXIS 12105, at *6-8 (Fed. Cir. June 27, 2014), this Court reviewed circumstances where disavowal applies.  For example, limitation is appropriate where the specification or prosecution history clearly indicates

that a particular feature is not included in the invention.  *Id.* at * 6, *citing*,

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc*., 242 F.3d 1337,

1341 (Fed. Cir. 2001).  It is also appropriate where the invention is clearly

limited to a particular form of the invention.  *Id.* (citing *Edwards*

*Lifesciences LLC v. Cook Inc*., 582 F.3d 1322, 1330 (Fed. Cir. 2009)).  More

specific examples include statements that constitute characterizations of the

invention as a whole, rather than directed to preferred embodiments.  *Id.* at

*7 (citing *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1367

(Fed. Cir. 2007)).  This includes where the patentee describes how the

invention operates, e.g., by pushing rather than pulling, followed by a

statement that the difference was an important feature of the invention.  *Id.*

(citing *SafeTCare Mfg., Inc. v. Tele-Made, Inc.*, 497 F.3d 1262, 1269-70

(Fed. Cir. 2007)).  These cases and examples are instructive here and support

the district court's claim construction.

     First, Southco's Abstract summarizes the invention, stating that

"protrusions integral to the outer perimeter of the head portion of the screw

to rigidly secure the perimeter of the head of the screw to the inner surface

of the knob, the protrusions providing a press-fit of the screw to the inner

surface of the knob <u>where the screw is pressed into the knob from the</u>

<u>underside of the knob</u>."  (A4541, Abstract.) (Emphasis added.)  In the

summary of the invention, the patentee characterizes the invention, stating that "[t]he captive screw of the present invention has a <u>unique configuration in the means by which the screw portion of the captive screw is mounted to the knob of the captive screw</u>." (A4548, 1:33-36.) (Emphasis added.) This is followed in the specification with "[t]he flange with the protrusions or (*sic*, on) the screw head with the protrusions <u>rigidly secures</u> the screw head to the inner surface of the knob and <u>provides a press-fit</u> of the screw to the inner surface of the knob." (A4548, 1:44-48.) (Emphasis added.) The bottom-up press-fit is further characterized in reference to the prior art, wherein the invention is described as the "screw head is installed into the knob <u>from the bottom side of the knob rather than the top side of the knob as in similar prior art screws</u>, providing further advantages as described below." (A4548, 1:50-53.) (Emphasis added.) This is followed by the statement in the Summary of the Invention that "[t]he construction of the knob/screw interface allows for insertion of the screw into the bottom of the knob, rather than the top of the knob." (A4548, 1:61-63.) Even in alternate embodiments, Southco carefully instructs that the bottom-up press-fit is retained, noting that "[a]n alternate embodiment 10 of the captive screw of the present invention is depicted in FIGS. 12 and 13…. This <u>embodiment does retain the advantages of the structure by virtue of the fact that the screw</u>

installs through the bottom of the knob, rather than the top, as in prior art screws." (A4550, 5:47-59.) (Emphasis added.)

During the reexamination of the '095 patent, Southco emphasized the bottom-up press-fit as the key factor of its invention. The prosecution history is relevant to how the patentee understood the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) ("[P]rosecution history provides evidence of how the PTO and the inventor understood the patent."). Here, the invention was clearly understood in the context of the bottom-up press-fit. Claim 16 was rejected as obvious in view of the prior art. (A2337.) The prior art rejection was overcome based on Southco's reference to the protrusions ("a significant limitation") that rigidly attach the screw head "when properly installed." (A2348.) (Emphasis added.)

Again, Southco fails to identify exactly what is meant by "rigidly secure," but the referenced protrusions are only illustrated with respect to a press-fit. Southco further distinguished the prior art on the basis of the bottom-up press-fit, stating that the prior art reference to "Huck does not disclose the chamfer or the flow of material as claimed." (A2349.) (Emphasis added.) Specifically, Southco argued as follows:

> The Huck drawing also fails to disclose the chamfer on the underside of the screw head or the flow of material from the inner surface of the knob into the area provide by the chamfer. The chamfer at the top surface of the Huck screw does not

44

function to permit insertion of the screw from the bottom of the knob.  If it is assumed that the top portion of the knob in Huck is bent over the chamfer, that is not comparable in any respect to the flow of material from the inner surface of the knob called for by the claims.  There is nothing to suggest that Huck's knob could be inverted to provide insertion from the bottom and it could not be accomplished, in any event, without completely redesigning it."  (A2349.)

The district court correctly interpreted "rigidly secure" as limited to the only reasonable interpretation:  that is, one which included displacing knob material in a press-fit that requires the displacement of knob material from the inner surface of a knob during the press-fit.

As Fivetech's injection-molding process does not displace knob material from the inner surface of a knob as a screw is pressed into a knob, the court correctly found no infringement.

### B.    The District Court Properly Found that Fivetech's Accused Products Fail to Meet the Chamfer Limitation.

1.    Southco's Expert's Initial Expert Report, as With the Analysis of "Rigidly Secure," is Completely Conclusory on the Issue of "Annular Chamfer."

In Southco's expert's initial report, Dr. Pratt again provides a conclusory infringement analysis on the "annular chamfer" limitation.  The entirety of the '012 patent's claim 2 is instructive:

The head portion (2) of the Series 46 fasteners has a top surface (3), a flat annular bottom surface (4), an annular chamfer (21) peripheral to the annular bottom surface (4) which is filled with material from inner surface (13) of knob (8).  (A4149, Table Row 3.)

45

That was the complete report on the "annular chamfer" limitation—no tests, no analysis, and no explanation.

      2.      <u>Southco's Claimed Prejudice in Not Getting Discovery of Dr. Dornfeld's Expert Analysis of No Chamfer Is False—Southco Simply Didn't Ask.</u>

Southco had ample time to evaluate Fivetech's 46 Series screws.  It had 500 screws at its disposal to analyze and test.  However, Southco made no tests or measurements <u>on the actual Fivetech products</u>.

Southco deposed no one during discovery.  (A4080.)  Southco failed to conduct any tests itself and failed to provide a competent analysis of the chamfer limitation issue.  Yet it attempts to blame Fivetech for not proving Southco's own case.  For example, Mr. Frattarola complains that Fivetech failed to identify the manufacturer and part number of the standard screws used by Fivetech.  (A3798, ¶12.)  Southco has the burden of proof on its infringement allegations, not Fivetech.  It was Southco's responsibility to develop the evidence to support its case, and it should have made sufficient inquiry before it filed its case.  It chose not to do so.

To put things in context, as Southco concedes in its brief, at the time Fivetech filed its summary judgment motion for noninfringement of the '012 patent, fact and expert discovery had closed.  (Br. 9.)  At the close of discovery, Fivetech had only Dr. Pratt's initial conclusory expert report, the

entire analysis of which simply stated, without support, that Fivetech's products contained the "annular chamfer." Summary judgment was appropriate. Fivetech simply asked Dr. Dornfeld to determine whether the screws of the accused products contained the claimed chamfers that appear in claims 2-5 and 7-14 of the '012 patent. Southco should have done this in compliance with Rule 11 before filing its complaint. Further, Dr. Pratt should have done the analysis in preparing his expert report. Southco's cry of foul attempts to divert attention from its own failure to conduct its own tests and produce a competent infringement assessment. Of note, Southco argues that admitting Dr. Dornfeld's declaration would disrupt and delay trial. (Br. 55.) However, what exactly was Southco planning to use as evidence at trial? The entire extent of its proof was Dr. Pratt's conclusory observation that is essentially "it looks like a chamfer to me." No court would allow the issue to go to a jury on such a lack of evidence.

Moreover, Southco did not seek discovery. Rule 56(d) of the Federal Rules of Civil Procedure provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

Southco did not seek relief under Rule 56(d).  Rather, Southco opposed

Fivetech's motion for summary judgment, demonstrating a lack of prejudice.

The district court properly exercised its discretion in denying Southco's

motion to strike Dr. Dornfeld's declaration.

3.    <u>Assuming the Absence of Dr. Dornfeld's Declaration
      Underscores that Southco Lacked Evidence to Establish
      the "Chamfer" Limitation in the Fivetech Products.</u>

Southco is in the awkward position of complaining about, but

nevertheless relying on, Dr. Dornfeld's declaration in attempting to raise a

fact issue.  Dr. Pratt's declaration opposing Fivetech's summary judgment

motion discusses and criticizes Dr. Dornfeld's declaration in Paragraphs 47-

53.  (A3580-3583.)  When those are excluded, Dr. Pratt turns to engineering

drawings, which he claims "show[] much more clearly than Dr. Dornfeld's

photographs that there is a chamfer on the screw head."  (A3583, ¶55.)  Dr.

Pratt makes no tests or analysis himself as to the actual Fivetech products.

He argues that "chamfered or beveled edges may be made by heading or

other forming processes without machining or the removal of material."

(A3586, ¶58.)  In Paragraph 59, he refers to an AISI 1020 steel screw head

being cold formed in a steel die."  But Dr. Pratt makes no analysis of

Fivetech's products.  (A3586.)  The remainder of the declaration fails to

make any analysis of the actual Fivetech products; rather, it merely provides

speculation based on conclusory and unsupported observations.  Yet again, in Paragraph 65, Dr. Pratt complains that "Fivetech provides no reference to a catalog, part number, or manufacturer to support its contention that they use a standard screw."  (A3590.)  Again, it is not Fivetech's obligation to support Southco's infringement analysis; rather, Southco was obligated to seek discovery, conduct competent analyses, and explain how Fivetech's products met the "chamfer" limitation of the asserted claims.  It did not do so.

Adding Dr. Dornfeld's declaration and analysis back into the equation does not improve Southco's position.  The most that can be said of Dr. Pratt's observations is that "it looks like a chamfer to me."  Dr. Pratt, although criticizing the methodology and clarity of Dr. Dornfeld's tests and analyses (tests that Dr. Pratt should have done himself), only speculates that Dr. Dornfeld's photos show chamfers.  "It is my opinion that every reference by Dr. Dornfeld to 'radiused edge' in Paragraph 10(g) actually refers to burrs left on the sample by the process used to prepare them."  (A3581, ¶50.)  But Dr. Pratt made no independent tests or measurements.  Dr. Pratt then observes that "[a]lthough Dr. Dornfeld's methodology obscures the periphery of the bottom edge of the screw heads, it is apparent from the several of his photographs that the bottom edge of the Fivetech screw head

is, in fact, beveled." (A3581-3582, ¶52.) Rather than undertaking his own tests, Dr. Pratt is content to leave the analysis in a pleasant state of obscurity.

      4.    <u>The District Court Correctly Concluded that Southco Failed to Raise a Fact Issue on the "Chamfer" Limitation.</u>

The district rejected Southco's proffered expert testimony. (A37-38), and correctly found that no reasonable jury could conclude that Fivetech's Series 46 screws have an annular chamfer under either a literal infringement or a doctrine of equivalents theory. (A39.)

Southco cites *Freeman v. Gerber Prods. Co*., 388 F. Supp. 2d 1238 (D. Kan. 2005) and *Afros S.P.A. v. Krauss-Maffei Corp*., 671 F. Supp. 1402 (D. Del. 1987) for the proposition that "there is no legal restriction on the use of images of an accused product, and in particular engineering drawings considered by an expert, to show or corroborate an expert opinion regarding the presence of a claimed feature in the accused product." (Br. 44.) But these cases are easily distinguishable because what the drawings showed was not disputed.

     **C.**    **The District Court Correctly Found that Fivetech's Products Fail to Meet the "Fills the Chamfer" Limitation.**

      1.    <u>The "Fills the Chamfer" Limitation Requires the Displacement of Knob Material.</u>

The limitation "fills the chamfer" first assumes that a chamfer exists. Second, "fill the chamfer" is understandable only in the context of the

function of the chamfer in the bottom-up press-fit described in the patent and the displacement of knob material during the press-fit that subsequently "fills the chamfer."

Southco disavowed any construction of "fills the chamfer" that does not involve the displacement of knob material. As reference to the intrinsic record makes clear, Southco repeatedly emphasizes in the intrinsic record, including the reexamination, the bottom-up press-fit and the role of the recited chamfer, the same limiting language as discussed above with respect to the "rigidly secure" limitation.

Southco's proffered evidence also fails to raise a fact issue. (*See* A39.) Southco relies on evidence that compares the '012 patent to drawings, rather than the Fivetech products in issue. Second, the reference to the Dornfeld declaration as demonstrating the "fills the chamfer" limitation is just as insufficient as Southco's evidence that the Dornfeld declaration shows a "chamfer." It is purely conclusory.

### D.    Southco Raises No Genuine Issue of Material Fact on the Asserted Doctrine of Equivalents Issue.

Southco argues that the district court failed to conduct an appropriate doctrine of equivalents analysis with respect to the chamfer limitation. This argument also fails. First, Dr. Pratt's declaration (A3589-90, ¶64) is conclusory and fails to provide the required linking testimony. *See, e.g.*,

*Gemalto S.A. v. HTC Corp.*, No. 2013-1397, 2014 U.S. App. LEXIS 11520, at *27 (Fed. Cir. June 19, 2014) ("Establishing infringement under the doctrine of equivalents requires particularized testimony and linking argument as the equivalence between the claim limitation and the alleged equivalent.").  Here, Dr. Pratt just makes a general reference that a "chamfer does have a function and that function is to provide a space to be filled with knob material to help rigidly secure the knob to the screw."  (A3589-90, ¶64.)  Not only does Dr. Pratt omit any testimony supporting his interpretation of the function, there is no function/way/result analysis or insubstantiality of the differences analysis.

Second, "chamfer" is entitled to no range of equivalents under prosecution history estoppel given the explicit arguments made during reexamination, which were used to distinguish the prior art on the basis of the chamfer and the material flowing from the inner surface of the knob to fill the chamfer in a bottom-up press-fit of a screw head into a knob.  *See, e.g.*, *Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1174 (Fed. Cir. 1993) ("Unmistakable assertions made by the applicant to the Patent and Trademark Office (PTO) in support of patentability, whether or not required to secure allowance of the claim, also may operate to preclude the patentee from asserting equivalency between a limitation of the

claim and a substituted structure or process step."); *see also Gemalto*, 2014
U.S. App. LEXIS 11520, at *16-17 (arguments made regarding same
limitations in initial application applies with equal force to patents issued
subsequently.).

## IV.    THE DISTRICT COURT PROPERLY FOUND NO TRADEMARK INFRINGEMENT.

### A.    Southco's Claim Does Not Support Extraterritorial Application of the Lanham Act.

The district court found no evidence of Fivetech activity in the U.S.
involving Fivetech's mark, "even when considering Southco's supplemental
evidence." Therefore, the court found no support for extraterritorial
application of the Act.  (A62-63.)

Southco argues that the court relied on the wrong definition of "use in
commerce."  (Br. 59.)  Southco also argues that the court impermissibly
resolved genuine issues of material fact regarding Southco's evidence of
Fivetech's "use in commerce."  *Id.*  Both assertions are incorrect.

### B.    Southco Fails to Address the Evidence Under the "Substantial Effects" Test for the Extraterritorial Application of the Lanham Act Against a Foreign Defendant.

Southco is incorrect that the court adopted the wrong definition of
"use in commerce."  In creating its argument, Southco merges two separate,
and distinct, issues, namely, the domestic "use in commerce" under the Act

by U.S. citizens, and the extraterritorial application of the Act that involves very different considerations.

Southco fails to demonstrate a substantial effect on U.S. commerce by a foreign citizen to warrant the extraterritorial application of the Act. *See Buti v. Impressa Perosa, S.R.I.*, 139 F.3d 98, 102 (2d Cir. 1998)("the exercise of Lanham Act extraterritorial jurisdiction is governed by a three-factor analysis examining (i) whether the defendant is a United States citizen; (ii) whether the defendant's conduct had a 'substantial effect' on United States commerce; and (iii) whether there is a conflict with trademark rights under foreign law").  In analyzing conduct that has had a "substantial effect" on U.S commerce, the central issue is whether the foreign citizen has conducted its affairs "in such a way as to 'substantially affect' United States interstate or foreign commerce, and thereby fall within Congress's authority under the Commerce Clause." *Id.* at 102-103.

Southco relies on *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123 (2d Cir. 2009), which provides a study of the definitions of "use in commerce" under the different parts of the Lanham Act.  (Br. 60.)  However, *Rescuecom* did not address "use" that has a "substantial effect" on U.S. commerce in applying the extraterritorial application of the Act.  Therefore, *Rescuecom* is irrelevant to the issues here.

Based on this false premise, Southco cites a litany of cases as supporting its proposition that Fivetech's website catalog and "offer to sell" are sufficient to invoke the Lanham Act. However, the cases cited by Southco (Br. 62-64) do not address the issue of the "substantial effect" on United States commerce to support the <u>extraterritorial</u> application of the Lanham Act.

In contrast, the cases cited by the district court, and other relevant legal authority, consistently support that under the undisputed facts here, there is no basis for the extraterritorial application of the Lanham Act.

### C.    No Support Exists for the Extraterritorial Application of the Lanham Act.

Southco makes no allegation that the district court made factual errors. Southco's argument on appeal boils down to: (1) the website, (2) the alleged "offer for sale," and (3) Fivetech's trademark application. (Br. 62.)

In *McBee v. Delica Co., Ltd*., 417 F.3d 107 (1st Cir. 2005), the First Circuit discussed the standards for invoking the extraterritorial application of the Act. The court held that "the Lanham Act grants subject matter jurisdiction over extraterritorial conduct by foreign defendants only where the conduct has a substantial effect on United States commerce." *Id.* at 120. To demonstrate "substantial effect" the evidence must show an impact

"within the United States … of a sufficient character and magnitude to give the United States a reasonably strong interest in the litigation."  *Id.*

> 1.    Existence of a Website Alone Does Not Support Extraterritorial Application Act.

Southco argues using a website to promote goods or services, without more, satisfies the "use in commerce" requirement for infringement."  (Br. 62.)  This is incorrect.  In *McBee*, the First Circuit rejected the proposition that a foreign defendant's website, alone, was sufficient to invoke the extraterritorial application of the Lanham Act.  417 F.3d at 124 (noting that "allowing subject matter jurisdiction under the Lanham Act to automatically attach whenever a website is visible in the United States would eviscerate the territorial curbs on judicial authority that Congress is, quite sensibly, presumed to have imposed in this area.").  While it is not impossible to implicate a foreign website under the Lanham Act, the plaintiff must "first establish that the website has a substantial effect on commerce in the United States before there is subject matter jurisdiction under the Lanham Act."  *Id.* In *McBee*, the website was written in Japanese.  In commenting that "most American consumers are unlikely to be able to understand [the defendant's] website at all," the First Circuit stressed that the plaintiff "produced no evidence of any American consumers going to the website and then becoming confused about whether [the plaintiff] had a relationship with [the

defendant]." *Id.* That is the situation here. Southco argues that the mere

existence of Fivetech's website supports application of the Lanham Act.

Southco relies only on the existence of the website, and offers no evidence

of any confusion.[14]

      2.    <u>No Support is Provided that an "Offer" Meets the "Substantial Effects" Test, Particularly Where the Only Evidence of Any Offer Was Induced by Southco Itself.</u>

Fivetech made one sale of the accused screws into the U.S. that was

induced by Southco itself, and those screws lacked the Fivetech mark. The

court rejected Southco's "offer" argument, concluding that it was not a "use

in commerce" sufficient to bring Fivetech's "actions within the purview of

the Act." (A57.) In fact, the alleged "offer" is based on an unsupported

allegation in the summary judgment briefing below that Fivetech offered to

sell captive fasteners with the Fivetech mark to SRI. (A2889.) Rather,

Southco had SRI make an order for Fivetech products with the Fivetech

mark, an order that Fivetech <u>rejected</u>. (*See*, A630 n.6; A3352 n.4; A169-

170, ¶¶13-17.)

---

[14] In *Gallup, Inc. v. Bus. Research Bureau (PVT.) Ltd.*, 688 F. Supp. 2d 915, 925 (N.D. Cal. 2010), the district court found the assertion that a foreign website maintained in English is insufficient to support harm to U.S. commerce, observing that "[t]his is tantamount to saying that <u>any</u> website maintained in English could be deemed infringing, because if it is in English, Americans <u>might</u> be interested in reading it or citing to it.") (Emphasis in original.)

Southco provides no authority that a mere price quote by the foreign defendant is sufficient to establish an "offer for sale" under the domestic reach of the Lanham Act, or that such a "rejected order" is sufficient to meet the "substantial effects" test to warrant extraterritorial application of the Lanham Act. Neither *Orthovita, Inc. v. Erbe*, No. 07-2395, 2008 WL 423446 (E.D. Pa. Feb. 14, 2008), nor *Tommy Bahama Grp., Inc. v. Sexton*, No. 07-06360 EDL, 2009 WL 4673863 (N.D. Cal. Dec. 3, 2009) *aff'd*, 476 F. App'x 122 (9th Cir. 2012) supports the notion that even if an "offer to sell" is presumed, such an incomplete transaction, where no products ever entered the U.S., meets the "substantial effects" test.

Even assuming the rejected order implicates the Lanham Act, summary judgment is warranted. In *McBee*, an actual sale was made in the U.S. to the plaintiff's investigators. 417 F.3d at 122. As here, there was no evidence of any other sales to U.S. consumers. *Id.* Although the First Circuit found sales in the U.S. were domestic acts that did not implicate the extraterritorial application of the Lanham Act, the First Circuit entered summary judgment for the defendant, noting that on a summary judgment record, the court "may affirm on any ground supported by that record." *Id.* at 127-28, *accord*, *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009). As the First Circuit observed, "there is no evidence of existing confusion or

dilution due to [the defendant's] past sales, since these few sales were all made to McBee's own investigators, who were brought in to assist in this litigation and therefore fully understood McBee's lack of any relationship with [the defendant]." *Id.*

That is the case here. Although there is no evidence or argument that the order placed by Southco and rejected by Fivetech even amounts to an offer for sale in the United States, there is no evidence of any offer for sale other than the one allegedly made to SRI at the request of Southco. Therefore, there is no evidence of confusion given the relationship between Southco and SRI and the purpose of supporting Southco's litigation.

3.    Southco Cites No Authority that a Trademark Application Alone Supports an Infringement Claim or Implicates the "Substantial Effects" Test.

Southco cites no authority supporting its proposition that Fivetech's trademark application is a "use in commerce" sufficient for Lanham Act jurisdiction. (*See*, Br. 62-64.) The authority is to the contrary. *See, e.g.*, *Omega S.A. v. Omega Eng'g, Inc.*, 396 F. Supp. 2d 166, 177 (D. Conn. 2005)("In order to succeed in a claim of trademark infringement … [plaintiff] must show … 'uses in commerce' [of] the allegedly infringing mark…. Neither the application for a trademark registration nor the

existence of a pending trademark application give[s] rise to a claim of

trademark infringement or false designation of origin.").

> 4.    An Application's Declaration Absent Evidence of Actual Use in Commerce, is Insufficient to Raise a Fact Issue.

A trademark application alone does not raise an infringement claim.

Evidence of an actual use in commerce is required.  Setting up the

declaration and contrasting it to Fivetech's president's declaration is

insufficient to raise a fact issue.  The trademark application does not by itself

support infringement, and Fivetech's declaration <u>affirms</u> that Fivetech did

not use its Five Pentagon mark in commerce.  There is still no evidence of

actual use in commerce, only an affirmance that there is none.

No reasonable jury could find that Fivetech's mark was used in U.S.

commerce based on the trademark application.  "Southco offered no

evidence that supported Mr. Rabin's statement that … the mark was sold in

United States commerce beyond the few instances discussed here."  (A57-

58.)

> 5.    There is No Genuine Issue of Material Fact As to Any Issue and the District Court's Order of No Infringement Warrants Full Affirmance.

Southco raised no genuine issue of material fact.  Based on the record

here, affirmance of the courts holding of no trademark infringement is fully

warranted.

## <u>CONCLUSION</u>

For the foregoing reasons, Fivetech respectfully requests that this Court reject Southco's appeal, uphold the district court's rulings of non-infringement and uphold the court's denial of the motion to strike Dr. Dornfeld's declaration.

Dated:  July 17, 2014

By:  /s/ Glenn W. Rhodes
Glenn W. Rhodes

RHODES ATTORNEYS AT LAW P.C.
Glenn W. Rhodes
  Glenn@Rhodes-PC.com
Heather H. Fan
  Heather@Rhodes-PC.com
One Market Street
Spear Tower, Suite 3600
San Francisco, CA  94105
Telephone:  (415) 293-8185
Facsimile:   (415) 477-4003

CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & MARTIN, P.C.
Elizabeth S. Fenton
  bfenton@chamberlainlaw.com
300 Conshohocken State Road
Suite 570
West Conshohocken, PA  19428
Telephone:  (610) 772-2340
Facsimile:  (610) 772-2305

Attorneys for Defendant-Appellee
Fivetech Technology Inc.

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 17th day of July, 2014, I caused this Brief

of Defendant-Appellee to be filed electronically with the Clerk of the Court

using the CM/ECF System, which will send notice of such filing to the

following registered CM/ECF users:

>Benjamin E. Leace
>  beleace@ratnerprestia.com
>Christopher H. Blaszkowski
>  cblaszkowski@ratnerprestia.com
>Andrew J. Koopman
>  akoopman@ratnerprestia.com
>Ratner Prestia
>1235 Westlakes Drive, Suite 301
>Berwyn, PA  19312
>(610) 407-0700
>
>Brian S. Seal
>  bseal@ratnerprestia.com
>Ratner Prestia
>1250 I Street, N.W., Suite 1000
>Washington, DC  20005
>(202) 808-7364
>
>*Counsel for Plaintiff-Appellant*

Upon acceptance by the Clerk of the Court of the electronically filed

document, the required number of copies of the Brief of Defendant-Appellee

will be hand filed at the Office of the Clerk, United States Court of Appeals

for the Federal Circuit in accordance with the Federal Circuit Rules.

>/s/ Glenn W. Rhodes
>*Counsel for Defendant-Appellee*

62

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ] this brief contains [*13,138*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

   [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: <u>July 17, 2014</u>      <u>/s/ Glenn W. Rhodes</u>
                                        *Counsel for Defendant-Appellee*